May it please the court, my name is Will Tomlinson, and I represent Great American, which insured Whispering Lake, the owner of an apartment complex in Kansas City, Missouri. By granting summary judgment for the plaintiffs in this case, the district court has effectively held that no reasonable jury can conclude that it could be gross negligence to kill a child while firing a weapon to celebrate the 4th of July. This case turns on a bilateral indemnity agreement. Under that agreement, who is to indemnify whom is determined by the conduct of YARCO and its employees and whether that conduct constitutes gross negligence. Unless this court holds that no reasonable jury could conclude that it is gross negligence to kill a child while firing a gun to celebrate, then summary judgment for the plaintiffs cannot be sustained. Let me ask you, um, you're assuming here that the indemnity agreement will govern the insurance coverage? In other words, that the Walmart, um, and what was the Missouri Court of Appeal case, are applicable to this situation? Or is there any dispute about that, I guess? There is a dispute, and we say that it shouldn't be. In other words, this fact scenario in this case isn't the type that Walmart contemplated. In other words, Walmart contemplated a situation where we can look at the facts after the settlement or whatever, and we can say, we know how this would ultimately turn out, and we're just going to take a shortcut and get to the end. It's very hard to know how this was going to turn out. And that's why Walmart ought to apply here. Now, it's a little bit more complicated than that. We've addressed it in our brief. But if Walmart doesn't apply, then you apply the language of the insurance policies to determine how you allocate between the various insurance companies, and it becomes an issue of law. But the trial court never reached that issue, because it clearly rested itself on the Walmart exception. And that's why I want to address that first. The significance of the indemnity clause is because if you look at the contract language, for example, the plaintiff, Zurich, is a primary carrier, and under policy language, would clearly have to pay first. Federal agreed to pay immediately after Zurich, and so it should pay second. And Great American, its policy, its basic insuring clause says, we don't pay until all other coverage is exhausted and should come last. What if there's similar language in one of the other policies, particularly the other umbrella policy? Under the federal policy, that other language is in the other insurance clause back in the conditions provision to the policy, not in the basic insuring clause. And the case we cite from California looks at this and says, you have to decide, are they at the same level? In other words, the other insurance clauses really decide what happens when you have a draw between two insurance companies at the same level. We don't have that here. In other words, it's clear from the federal Great American policy that under the basic insuring clause that it comes last. Well, it seems to me, and I'm speaking for myself, that if we agree with your premise that the matter of gross negligence is at a minimum of issue for the jury or even go the opposite extreme, which is also, I think, your position that that could be decided as a matter of law that this is gross negligence, that all these other issues probably should be sorted out at the trial level rather than us trying to look at these policies and figure out, is the indemnity agreement controlling on coverage? If it doesn't, who's first, who's second? I mean, that's the way I would look at it. Now, am I wrong about that? Well, it's an issue of law and obviously this court can enter the judgment that the trial court should have entered if it's an issue of law. The trial court really didn't get to any of those issues, did it? That is correct. I mean, it sort of did obliquely, but I mean, really no discussion about any of those issues. As I understand what the trial court did, it assumed without much discussion that the indemnity provisions controlled insurance coverage. And if it's gross negligence, you win. If it's not gross negligence, the other side wins and they pay. If it's not gross negligence, you pay. If it's gross negligence, they pay. Well, I think to follow up on that, if we were to agree with your position and suggest that it, as a matter of law, is gross negligence, is there anything left to decide or is the case over? If you find as a matter of law that it's gross negligence, then the case is really over. It would have to be remanded with directions because we had a counterclaim that was never, we didn't even ask for summary judgment on that. But if the ruling was this is gross negligence, then the court would have to view our counterclaim in light of that decision. But that otherwise, certainly their claims would be over. But the counterclaim is just for your contribution, right? Yes. So, I mean, it's a mathematical computation. Correct. Correct. Well, let's get back to how you started out your argument on this gross negligence issue. Is that a matter at this point where all the facts, as I understand it, all the facts are essentially agreed to, no dispute of facts. You may correct me there. But is this just a legal question? Well, your honor, it's also the inferences from those facts. In other words, we're entitled as a non-moving party, the most favorable inference on a motion for summary judgment. But if you remand it, then of course the jury could draw their own inferences from those facts. We also don't have the facts totally fleshed out, but there is pretty much agreement is what happened. I mean, he shot this little girl while celebrating for the Fourth of July. And he pled guilty to manslaughter in the first degree, which requires recklessness. So those facts aren't disputed. That's for certain. And under the indemnity clause itself, and I think that's, this is important, is that the indemnity says if the managing agent, the managing agent shall assume sole responsibility for and hold and save the owner free and harmless from any claim arising out of or in connection with gross negligence on the part of the managing agent or any of its employees. And so that arising out of language, this court in Spiritus said that's very broad. Their whole point with the trial court was just look at the pleadings and you know what, these gross negligence words, they don't mean anything because in Missouri we don't recognize gross negligence at common law. That's true. There are, there is no tort of gross negligence in Missouri. But that doesn't mean Missouri doesn't recognize it in contract. I've cited a case, for your honors, where it was enforced in a contract. We use it numerous times in statutes. In fact, when I searched, I couldn't believe how many statutes say gross negligence is a standard. So it's not like gross negligence is somehow against public policy. And these contracting parties, and remember, it wasn't us. It was the owner and the managing agent contracted for this. And they intended those words to have meaning. You can't read the indemnity clause without concluding that there was no intention for the owner to indemnify all negligence. They clearly put in gross negligence. There was some level of negligence that the owner was not intending to indemnify. In fact, expected the managing agent to indemnify them. And so that's the dividing line of gross negligence in that case. I note that in pleading guilty, our criminal statute includes for reckless homicide or recklessness. Let me ask you a couple of questions about that. First off, can we consider the manslaughter plea and conviction? Because at least the Fourth Circuit St. Paul Fire case says, hey, just look at the underlying pleadings. Well, St. Paul doesn't really say that. St. Paul, if you read St. Paul, and it's... What they say is, they looked at the pleadings, but they also say, and the underlying facts alleged are consistent with that. And they say there is no evidence in the record from which someone could conclude gross negligence. If you look at this record, there is plenty of evidence from which someone could find gross negligence, including the guilty plea. In fact, Missouri Supreme Court has said it's collateral estoppel. The underlying pleadings pled a negligence count, right? Well, they pled various things, but yes, they pled negligence. But remember, in Missouri... The term recklessness used at all? Yes, recklessness was used. Punitive damages were requested in every count which requires willful, wanton, or reckless conduct. They said it was a conscious disregard for the safety of other people. So clearly, the underlying pleadings in this case are nothing like those in St. Paul, where it was a food poisoning case. Somebody ate something in a restaurant that had some contamination with it, and it was just a simple negligence case. You could look at that and say there's just no gross behavior here. Why are the underlying pleadings, as opposed to what actually happened, important? I don't think the underlying pleadings... I mean, that's been their position from the very beginning, that you just look at the underlying pleadings. But the arises out of standard, and this court said it in the Spiritus case, when you have arising out of language, you look at the underlying facts, not necessarily how someone has characterized it in their pleading. But again, just for purposes of that pleading, that pleading says negligence. In Missouri, that is every form of negligence, including gross negligence. Missouri doesn't sort them out. The word negligence in a tort claim includes gross... every kind. So you can't tell by looking at negligence that it's not gross negligence. But when you look at the facts that are alleged, you see that they really are alleging much more. Let me go back to my question earlier. Are there any facts, relevant facts, that are in dispute here? I think it would only be the inference. No, I don't think... Okay. You said that earlier. What do you mean by that? What would be an inference, for example, that a jury could... Well, for example, even if you felt that it's perfectly okay for someone to go out and shoot on the 4th of July, that you don't see any real problem with that, that's your personal view. But if you say, well, but juries could disagree with me about that, then that's an inference that they could draw on. Really an inference, or is it a question of law? You have a given set of facts. Does that constitute gross negligence? Isn't that a legal question? Well, I think in this case, it can be decided. I mean, there have been a number of cases that have said this very fact scenario of shooting for celebratory purposes is gross negligence or recklessness. Well, to follow up on what Judge Gruner just asked, are there cases in Missouri that discuss gross negligence that you say is not a common law concept, so there's not a lot of case law on it? But I assume there are cases in Missouri on what constitutes reckless conduct. And is that an issue? Is a particular set of facts, and whether that's reckless, is that for the jury to decide, or is reckless a matter of law? Well, it can be. In other words, it's with negligence, with every theory. At some point, you can say, as a matter of law, this isn't it. But then you get into those gray areas where you say, you know, we're going to have to leave that to the jury. I can't tell you if that is or isn't the jury. Otherwise, we would always decide everything is a matter of law. If I own a Corvette, I may think driving 100 miles an hour is perfectly safe, and somebody else may think it's very reckless. Is that where we come from? Well, I think there's something to that. I mean, we leave it to the jury to place values on things. Thank you. Would you like to reserve some? Yes, I would. Thank you. Thank you. Good morning, counsel. My name is Dave Alheim. May it please the court? Counsel. Your Honor, I represent Federal Insurance Company, and I would first start off by saying the district court correctly saw this as a relatively simple matter, rather than the convoluted behemoth, as argued by Great American. The district court correctly determined as a matter of law that the order of insurance coverage between the Whispering Lakes Tower of Insurance and the Yarko Tower of Insurance, as set forth in page six of our brief, the district court correctly determined that the Indian Harbor and Great American Tower should be vertically exhausted before you reach the Yarko Tower of Zurich and Federal. And is that based upon the indemnification agreement? It is. So you agree with your opponent, then, that the indemnification agreement governs in this case, and the only issue, then, is gross negligence? Largely, yes. And so it's important to tell you how we got here. We filed this to determine the proper order of insurance coverage regarding a settlement of an underlying case. The underlying plaintiff in Jackson County controls his petition, and we as an insurance company have an obligation to defend our insurers. In the weeks before our jury trial, plaintiff filed a second amended petition. The underlying plaintiff was clearly attempting to shift the case, not so clearly, as Great American wants to argue, as whether it's okay to shoot a gun on the 4th of July. But whether Yarko negligently hired Mr. Sullivan, whether they negligently supervised Mr. Sullivan, whether they did a number of negligent acts that are related but tangential to the act of shooting. So in other words, did he properly act as a pool monitor on the day of the shooting? But they also included a respondeat superior argument, right? They did. They did. So there were certain things that I didn't like as an insurance company for federal, and there's some things that I did. There's some things that we provided coverage for and some things that we didn't. But we are looking at down the barrel of a jury trial in Jackson County on the second amended petition. And the choice that we have is to protect our insurers. Missouri Supreme Court and insurance law defines that an insurance company must sacrifice its own interest to protect the interest of its insurers. So in this case, I don't agree with what Mr. Sullivan did, but if I decided to put federal's insurance, federal insurance's interest ahead of those of Mr. Sullivan's, I as federal insurance company am breaching my fiduciary duty to him and subject to bad faith. Let's talk about what I think we've all agreed now is the nub. The indemnity provision seems like both sides agree that that governs it. Why aren't the facts of this case that are apparently undisputed, um, along with a guilty plea to something that requires recklessness and an underlying pleading that mentions recklessness, which I understand to be a little higher standard than gross negligence. Why isn't that enough for a finding of gross negligence or at least something arguably that should go to a jury? Well, one, uh, gross negligence is not defined in Missouri. There is no such thing as gross negligence, but it's in the contract. So somebody has got to define it. Well, what the court, the contracts and nullity, I'm not saying the contracts and nullity, but what I can tell you is, and the judge made a finding on gross negligence and you argue gross negligence. So you must think it means something. What I, what we argued was we are supposed to look at the second amended petition, the operative petition that we were all operating on under when we settled the case and look at those allegations. Missouri clearly recognizes negligent hiring. Missouri clearly recognizes negligent supervision. Missouri clearly recognizes these other theories of liability that don't rise to the level of gross negligence under any circumstance. Well, okay. But, but they also recognize respondent superior, which is the, the employer's responsible for the employee's actions. And let's look at the employee's actions. And if we went to a jury trial on that in the underlying case, there's a certain, there's a certainly a likelihood that federal could have walked away from this. Everyone could have walked away of account. If the jury found some found liability on a, on a portion that there was no coverage, all of us could have walked away and our insured would have been left out in the, in the wind to twist. And that's, but I assume Sullivan's not an insured. Well, there's no way Sullivan is not an insured if he's acting in the course and scope of his that he's not an insured is disingenuous at best. They never issued, they never issued a reservation of rights and they never disclaimed coverage. But let's go back to the question that Judge Grenner originally asked. Why is this on this, on the undisputed facts, not gross negligence? In order, if you're going to apply the indemnity agreement, the presumption, the presumption in the agreement is that Yarko is entitled to indemnity from Whispering Lakes, except in three circumstances. The presumption under that agreement is that on things that are not solely fraudulent, solely willful, and solely gross negligent. Here, we look at the second amendment petition. Clearly there are things that are run of the mill, ordinary negligence that are supervision. Also the respondent superior. That's in there too. And when you settle a case, you settle the whole case. You don't. And if, if, as your honor wants to say, great American wanted to carve out and allocate their portion of, you want to attribute the settlement to a negligent hiring theory. What I, what I'm suggesting is you settle everything and great American's assumption that you can say, well, it's clearly all in this gross negligence pool is incorrect. And especially in an insurance world, you settle the whole thing, especially, like I said, this is the trouble. The duty to defend is broader than the duty to indemnify. If every time that there was a claim that fell outside of coverage, an insurance company says, well, you know, we'll defend you, but forget, forget you on indemnity. We'd be trying cases left and right. Whereas the insurance company will ultimately make a decision that they're going to settle the case and forget, forego their coverage concerns. So what I'm saying in this case is there was plenty of evidence and plenty of indication in the underlying Jackson County action that there were things that could have been covered things that wouldn't have been. But the order that we're dealing with makes, findings about gross negligence and says that that's, I mean, implicitly says that's an important concept and he wasn't grossly negligent. He may affect you even argue he was acting in a safe manner that he was promoting safety. Well, what I see, which is a little push in the envelope, but that's not, first of all, I'm not, I'm not suggesting that we should look at extrinsic evidence. However, great American has strongly suggested we should. And in fact, that was their expert that said that, but, but not mine. I'm talking about the order though. The order makes talks about gross negligence. Are we to totally ignore that? What I think the great, the order talks about was that there's no evidence of gross negligence. First of all, there's no mention of gross negligence in the underlying petition. In the second amendment petition, there's no mention. You would expect that because it's not cause of action. That's true. But we have to live in the real world of what is in front of, in front of us when we're trying a case in two weeks in front of the real world is he shot a Glock 30 times and killed a person. So, well, I will also say it wasn't just him. There were other people that were there. It was undetermined whether he was the one that actually fired the plaintiff was trying to, to draft a theory and present it to the jury that would maximize potential insurance coverage. Because if, if there was a straight shooting case, federal would have denied it. Well, let me ask you, let's cut through the cloud. Are you, are you saying as a matter of law that on the undisputed facts in this case, there's no gross negligence on the facts as we know them in this case, including the guilty there's no gross negligence. I would say you have to look at as a matter of law, you look at the underlying petition facts. There's no gross negligence. If we get to that, do you lose? I would say the world that we have to live in is what is the operative on second amendment petition. And that's what Missouri courts have said. Missouri courts, particularly in the case, you're not answering my question. If we get to the underlying facts, is there at least a jury question about gross negligence? I don't, first of all, I don't know what that would look like. I don't know what standard that is. Um, and I think that's something that the great Americans asking you to do is create a standard as to what gross negligence would be under Missouri, which Missouri Supreme Court has said to do and that they don't recognize. Um, I would say that there is no gross negligence based upon the second amendment petition. Thank you, Mr. Alheim. We'll hear from Mr. Fields. May it please the court, Larry Fields for Zurich American insurance company. I'm going to start in echoing some of the same things or answering some of the questions or trying to, there is no dispute of fact in this case because the fact that's not disputed is the underlying facts weren't determined. That's the undisputed fact. The undisputed fact is that this case was settled and therefore there was no determination of what the underlying facts are. So when you say, if we look to the underlying facts, which underlying facts are you talking about? The only ones you can be talking about are the ones that are pled because that's the thing that we have. Well, isn't that an argument then for a jury trial? No, it's not an argument for a jury trial. Every court that's addressed this issue so far has said when a case is settled by an insurance company, you can presume the insurance company is settling the claims that are pled against it's insured and the facts contained in those pleadings and the facts contained in this pleading are that Sullivan or one of his friends was attempting to shoot a gun into a lake, but one bullet got away. But more importantly, Yarko. But the issue here, as I understand it, is you have insurance policies that normally, if there was no indemnity agreement, you would look to the language of the policies to try to sort out who's first, who's second. Certainly. But you do have an indemnity agreement and everybody agrees the indemnity agreement, which provides that the management company or that the owner would indemnify the management company controls. Correct. So now we have to say, well, what does the indemnity agreement say? The remedy agreement says owner indemnifies unless there's gross negligence. So that gets us right back into the gross negligence. Well, and why does that not get us back into gross negligence? Because that's what you're relying upon is the indemnity. I'm not saying it doesn't get us back into gross negligence. I'm saying it gets us back to the pleadings to determine that issue. So just like in Walmart versus RLA, just like in federal versus Hunt, there was no decision of the underlying facts, no determination of the underlying facts. Those cases also, just like the St. Paul case in Minnesota, had to turn back to the indemnity agreement. The portion of the underlying lawsuit, the underlying pleadings, were that Sullivan shot multiple times and killed the girl. Sullivan shot multiple times. Other people shot multiple times. Everybody was trying to shoot into the lake. And Yarko knew about these things going on, didn't prohibit these things going on, should have had security on the premises but didn't, should not have let Sullivan stay a pool monitor when they knew that he had a gun, and multiple other things that Yarko failed to do before the shooting ever even occurred. That's the underlying pleadings. Those are the facts that we settled this case on. And Yarko's independent concurrent negligence was absolutely a part of it and always has been. And that's frankly the place the plaintiff wanted to take this case. And if everybody wants to talk about the reckless conduct of Sullivan, that's not insured. So again, when you say the insurance companies, what they did was settle the claims were insured against their parties, their insureds, we're talking about Yarko's negligent conduct, possibly Sullivan's negligent conduct in thinking that it was smarter to go down by the lake to shoot these guns off versus by the pool as pled. Again, the facts are what is in the Second Amendment petition. Those are the facts, just like in the St. Paul case, just like in Walmart. We don't know what a jury would have decided actually. Let me ask you a question for clarification. This settlement that was reached, this global settlement, and all the insurance companies contributed to it, as I understand it, what was reserved by the insurance company, by the companies? How to allocate it amongst them. What about coverage itself? No. And so do you think that there was an agreement that whatever theory alleged in the plaintiff's complaint, the underlying complaint, that there was coverage for all of those theories? Well, I don't think there was an agreement one way or the other. I mean, the law basically is once you settle a case as an insurance company, you are admitting for one that the person that on behalf of was your insured, and you're paying for what the claims were against that insured. So you don't think there was any reservation in the agreement of those kinds of issues? In the settlement agreement? Between the insurance companies as it contributed money to get rid of this case? No. No one reserved any claim that we're paying for only so-and-so or only such claim. It was all of the claims against the insured, against all of the parties. Everybody was released from all of the claims on behalf of all of the parties. My time's up. Thank you. Thank you, Mr. Fields. Let me just briefly address this issue of negligent supervision and so on, negligent hiring. The language of the indemnity clause says that the managing agent shall assume sole responsibility for and save the owner harmless from claims arising out of gross negligence of employees. All these claims arose out of Sullivan's actions. Nothing Yarkov did hurt this little girl. Everything arose out of Sullivan's actions, and those were grossly negligent. So no matter which theory you look at, it still falls within the clause which says that the property manager should indemnify the owner, not the other way around as suggested by the district court. You ask about whether there is an agreement about coverage, and the federal actually negotiated the settlement in the end, and it simply wasn't addressed. The parties just agreed to, that is, the insurance companies agreed that they would fight about it at a later date to decide who should have paid what, and there was no limitation on what theory we would fight about. So implicit in what you've said is the understanding that these companies could, at a later date, argue that they should get all their money back because there's no coverage. What they were arguing was priority of coverage, and if you're asking about, it's our position Sullivan wasn't our insured, which doesn't really touch upon this basic threshold issue of gross negligence or not. That doesn't really matter if he was or wasn't for that purpose. It only really matters in a very limited context in our brief about a theory that if we were to have to pay, and Sullivan wasn't our insured, which he wasn't, then we would be stepping to Yarko's shoes and have an indemnity claim against him, and that's the kind of convoluted thing I understand. So I don't want to, I've run out of time, but it's covered in the brief. But I thank you all very much. Thank you, Mr. Tomlinson. Court wishes to thank counsel for the arguments today and for the due course.